UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
================================================

GLORIA WALLIS,

                           Plaintiff,

v.                                      5:08cv1025 (NPM /ATB)

NIAGARA MOHAWK POWER
CORPORATION, and NATIONAL GRID
USA SERVICE COMPANY, INC.,

                           Defendants.
================================================

APPEARANCES                             OF COUNSEL

Legal Services of Central New York      Samuel C. Young, Esq.
Attorney for Plaintiff
472 South Salina Street, Suite 300
Syracuse, NY 13202


Bond, Schoeneck & King, PLLC            Robert A. LaBerge, Esq.
Attorneys for Defendants                Stephen J. Vollmer, Esq.
One Lincoln Center
Syracuse, NY 13202


NEAL P. McCURN, Senior U.S. District Court Judge

## MEMORANDUM-DECISION AND ORDER

Plaintiff Gloria Wallis ("plaintiff") brings this action for employment

discrimination against defendants Niagara Mohawk Power Corporation, ("Niagara

Mohawk") and National Grid USA Service Company, Inc. (National Grid)

(collectively, "defendant") pursuant to the Americans with Disabilities Act

("ADA"), codified at 42 U.S.C. § 12101 et seq.  Plaintiff alleges that defendant

terminated her employment following a medical leave for treatment of an alleged

disability, despite her attempts to obtain accommodation for said disability in the

workplace, in violation of the ADA.  The court has federal question jurisdiction

pursuant to 28 U.S.C. § 1331, and venue is proper pursuant to 28 U.S.C. §

1391(a)(2) because a substantial part of the events or omissions giving rise to the

claim occurred in this judicial district.

Currently before the court is defendant's motion for summary judgment

(Doc. No. 22 ). For the reasons set forth below, the defendant's motion is granted.

## I.      Facts and Procedural History

For purposes of this motion, the facts are drawn principally from plaintiff's

complaint and documents attached thereto, and from defendant's statement of

undisputed material facts and plaintiff's response, filed pursuant to Local Rule

7.1(a)(1).  These facts are construed in the light most favorable to the plaintiff as

the party opposing summary judgment.

Plaintiff worked for defendant Niagara Mohawk from 1989 until April of

2005.  Plaintiff held various positions within the organization, including positions

in the mail room, credit department, litigation department, and customer service

department.  In 1996, plaintiff began working as a Customer Service

Representative C, a job that entailed bookkeeping duties and correcting customer

accounts in a computer database.  At that time, customer telephone calls were handled by employees who were classified Customer Service Representative B.

Following the merger of Niagara Mohawk with Nation Grid in 2002 and pursuant to the subsequent downsizing that took place, employees classified as Customer Service Representative B and C were informed that all customer service representatives must handle both customer service telephone calls and bookkeeping duties.  In June of 2003, plaintiff's father died, and plaintiff sought psychological treatment from licensed clinical psychologist Dr. Norman Lesswing ("Lesswing").  In September of 2003, Lesswing determined that plaintiff presented with symptoms of Major Depressive Disorder, Severe, with some accompanying symptoms  of Generalized Anxiety Disorder.

In early 2004, plaintiff was trained to handle customer telephone calls and began doing so after she passed a test to do the same.  Plaintiff alleges that handling customer calls proved very difficult for her, in part because English is her second language, and she complains that she once again began to experience severe stress and anxiety, in addition to physical symptoms.

In March of 2004, plaintiff transferred to a temporary summer position as a gas mechanic checking gas leaks in the field, then returned to her customer service position in August of 2004, where she again experienced physical and emotional

problems.  Her physician, Dr, Ted Triana ("Dr. Triana") removed her from work on November 3, 2004.  Plaintiff was diagnosed with anxiety disorder, chronic stress, back pain and depression by both Dr. Triana and her psychologist, Dr. Damien Vallelonga, Ph.D. ("Dr. Vellelonga").  On January 29, 2005, Dr. Vellelonga informed defendant by letter that plaintiff should be accommodated with reassignment to a position which did not require customer phone contact.  On January 31, 2005, Dr. Triana also wrote to defendant opining that while plaintiff was able to return to work, the stresses involved with customer service exacerbated her existing anxiety disorder, and Dr. Triana requested that defendant accommodate plaintiff by reassigning her to a position that did not involve frequent encounters with customers.

At the end of January 2005, plaintiff was released to return to work pursuant to the accommodations suggested by her doctors.  However, plaintiff was informed by her union representative that the defendant would not yet allow her to return to work.  On March 15, 2005, plaintiff submitted to an evaluation by Dr. Lesswing, who was chosen by defendant.   Dr. Lesswing concluded that plaintiff could function and return to work within her former job, or something similar, but that her disability wold preclude her from returning to a position which involved customer service contact.  On March 18, 2005, defendant's medical consultant, Dr.

Ivan Wolf ("Dr. Wolf") made a determination based upon and consistent with the

psychological evaluation made by Dr. Lesswing, finding that, in Dr. Wolf's

opinion, plaintiff was unable to return to her position as a customer service

representative.  On April 13, 2005, defendant's manager of labor relations, Bill

Lynn ("Lynn"), requested that Dr. Wolf be contacted and asked to change his

opinion that plaintiff was unsuitable to return to any position within the

defendant's organization.  Dr. Wolf clarified his opinion on April 14, 2005, and

opined that plaintiff was not suitable to return to any position at Niagara

Mohawk.[1]  On April 27, 2005, Lynn notified plaintiff's union representative that

due to plaintiff's medical condition, she was not considered suitable to return to

any position and Niagara Mohawk, and she was not considered an employee that

could be accommodated under the ADA.  Plaintiff alleges that she was forced to

take disability retirement because she was not permitted to return to work at

Niagara Mohawk in any capacity.

---

[1]       Plaintiff makes much of the issue of Dr. Wolf's clarification upon a request by Bill Lynn to do so, but after reviewing the letters in question, the court finds that Dr. Wolf's recommendations comport with the evaluation by Dr. Lesswing.  Similarly, defendant repeatedly mentions that plaintiff originally requested and received in forma pauperis status, which she later withdrew and paid the filing fee to the court.  Defendant states that plaintiff's federal tax returns show that plaintiff received rental income between $56,000 and $61,000 in the time frame relevant to this action, but defendant neglects to mention that those tax returns also show overall losses under adjusted gross income for those years.  The court has not ignored these issues but instead finds that they have no bearing on the outcome of this case.

Plaintiff filed a charge with the U.S. Equal Employment Opportunity Commission ("EEOC") on December 5, 2005.  In that discrimination charge, plaintiff alleged that Niagara Mohawk discriminated against her when the company refused to allow her to return to work after she had been out on disability leave, and failed to provide her with a reasonable accommodation because of her disability.  On June 30, 2008, the EEOC issued a determination dismissing plaintiff's discrimination charge.  That decision stated, in pertinent part, as follows:

> With respect to your allegation that you were discriminated against when the Respondent neglected to provide you with reasonable accommodation, the Commission maintains that in order to be considered an individual with a disability you must first provide evidence that you have a physical or mental impairment that substantially limits one or more major life activities.  You must also prove that you are able to perform the essential duties of the position, with or without an accommodation.  Based on Doctor reports, you were not able to perform the essential functions of any of the positions with or without accommodation.  You indicated that you were substantially limited in communication, however the investigation suggests that you were able to communicate, just not in stressful situations, thus your impairment is not substantially limiting.

> Under the Americans with Disabilities Act, an employer is not obligated to hire and or retain an individual who is not qualified to perform the essential duties of a position.

> Based on the aforementioned, it is unlikely that further investigation will result in a violation of the law.

Complaint, Doc. No. 1-2 at pp. 30-31.

The EEOC provided plaintiff with a Notice of Right to Sue with 90 days of

plaintiff's receipt of same.  The current action was timely filed in this court on

September 26, 2008.

## II.    Discussion

In its motion for summary judgment, defendant asserts, <u>inter</u> <u>alia</u>, that

plaintiff does not have a disability within the meaning of the ADA, that she was

not an "otherwise qualified" individual with a disability, and she cannot show that

she was terminated because of her alleged disability as required by the ADA.

A.    Motion for Summary Judgment

A motion for summary judgment shall be granted "if the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and

that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P.

56(c).  <u>See</u> <u>also</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552

(1986); <u>Security Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.</u>, 391 F.3d

77, 82 (2d Cir. 2004).  "[I]n assessing the record to determine whether there is a

genuine issue as to a material fact, the court is required to resolve all ambiguities

and draw all permissible factual inferences in favor of the party against whom

summary judgment is sought[.]" See Security Ins., 391 F.3d at 83, citing

Anderson V. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505 (1986).

"Only when reasonable minds could not differ as to the import of the evidence is

summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir.

1991), citing Anderson, 477 U.S. at 250-51.

 While the initial burden of demonstrating the absence of a genuine issue of

material fact falls upon the moving party, once that burden is met, the non-moving

party must "set forth specific facts showing that there is a genuine issue for trial,"

see Koch v. Town of Brattleboro, Vermont, 287 F.3d 162, 165 (2d Cir. 2002),

(citing Fed. R. Civ. P. 56(c)), by a showing sufficient to establish the existence of

every element essential to the party's case, and on which that party will bear the

burden of proof at trial, see Peck v. Public Serv. Mut. Ins. Co., 326 F.3d 330, 337

(2d Cir. 2003), cert. denied, 124 S.Ct. 540 (2003).

 B. The Americans with Disabilities Act

 In the present case, the court must initially determine whether plaintiff

suffers, as she claims, from a disability within the meaning of the ADA.  "The

ADA defines disability, with respect to an individual, as "(A) a physical or mental

impairment that substantially limits one or more major life activities of such

individual; (B) a record of such an impairment; or (C) being regarded as having

8

such an impairment. 42 U.S.C. § 12102(1)." <u>McNamera v. Tourneau, Inc.</u>, 326 Fed.Appx. 68 (2d Cir. 2009).

 "Major life activities include, but are not limited to: (I) [c]aring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, sitting, reaching, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, interacting with others, and working...." 29 C.F.R. § 1630.2(I) (West 2011). "The regulations define the term 'substantially limits' to mean: (I) unable to perform a major life activity that the average person in the general population can perform; or (ii) significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." <u>McNamera v. Tourneau, Inc</u>., 326 Fed.Appx. 68 (2d Cir. 2009) (<u>citing</u> 29 C.F.R. § 1630.2(j)(1)). "Whether an impairment substantially limits a life activity is determined by considering: (1) the nature and severity of the impairment; (2) the duration of the impairment; and (3) the impairment's permanent or long-term impact." <u>Id.</u> (<u>citing</u>  29 C.F.R. § 1630.2(j)(2)).

 "Title I of the ADA prohibits an employer from discriminating against a qualified individual with a disability in the terms, conditions, and privileges of

employment. <u>See</u> 42 U.S.C. § 12112(a)." <u>Guinup v. Petr-All Petroleum Corp.</u>, —

F.Supp.2d ----, 2011 WL 1298864 at * 3 (N.D.N.Y. 2011).  "To establish a prima

facie case under the ADA ..., plaintiff must show by a preponderance of the

evidence that: (1) the employer is subject to the ADA; (2) the plaintiff was

disabled within the meaning of the ADA; (3) the plaintiff was otherwise qualified

to perform the essential functions of the job, with or without reasonable

accommodation; and (4) the plaintiff suffered an adverse employment action

because of her disability." <u>Davis v. City of New York Health and Hospitals Corp.</u>,

2011 WL 4526135 (S.D.N.Y. 2011) (<u>quoting</u> <u>Heyman v. Queens Vill. Comm. for</u>

<u>Mental Health for Jamaica Cmty. Adolescent Program, Inc.</u>, 198 F.3d 68, 72 (2d

Cir.1999) (internal quotations omitted).  "The crux of the ADA ... claims,

therefore, is whether [plaintiff] was 'otherwise qualified' to perform her job ...

[plaintiff] bears the burden of production and persuasion with respect to whether

she is 'otherwise qualified.'  [Plaintiff] is not 'otherwise qualified' unless she is

able, with or without reasonable accommodation, to perform the essential

functions of the job in question." <u>Id</u>. (internal quotations omitted).  "While

[plaintiff] bears the burden of production and persuasion with respect to

demonstrating she is otherwise qualified, 'a court must give considerable

deference to an employer's judgment regarding what functions are essential for

service in a particular position.'" Id., quoting  D'Amico v. City of N.Y., 132 F.3d 145, 151 (2d Cir.1998).

"The determination of essential job functions is a fact-specific inquiry ... The Court must deny summary judgment where ... questions of fact exist as to whether particular tasks were essential functions of a plaintiff's position." Davis, 2011 WL 4526135 at *4.

In Davis, the court held that questions of fact did not exist on the issue of essential job function, as the plaintiff's pre-disability assignment was to a staff nurse position, and direct patient care was an essential function of her job.  The limitations the plaintiff presented demonstrated that she was unable to perform the functions of a staff nurse, and her requested accommodations precluded her from providing direct patient care. Id. at * 5.

In the present case, defendant asserts that plaintiff can only establish the first element to establish a prima facie case pursuant to the ADA, i.e., that Niagara Mohawk is covered by the ADA. Doc. No. 22-1 at p. 10.  In regard to the second element, plaintiff asserts that even though she may not have had a physical or mental impairment that substantially limited one or more life activities within the meaning of the ADA as it existed in 2005, she nevertheless met the definition of disabled under the ADA as she was regarded as having such an impairment by

11

defendant.  Plaintiff cites a 1997 Second Circuit for this argument.  "To prevail under this definition, plaintiff must establish that the defendant regarded her as having an 'impairment' within the meaning of the ADA, <u>i.e.</u>, that defendant regarded her as having an impairment that substantially limited a major life activity, and that defendant discriminated against plaintiff on that basis." <u>Francis V. City of Meriden</u>, 129 F.3d 281, 285 (2d Cir. 1997).  The court finds this argument unavailing.  A thorough review of the submissions of both parties in this action reveals no evidence that either party ever believed that plaintiff had an impairment that substantially limited a major life activity.  Defendant argues, and the court concurs, that based on, <u>inter alia</u>, plaintiff's own admissions at deposition, plaintiff fails to satisfy the second element, that she is disabled within the meaning of the ADA, as she is not limited in any major life activity. Doc. 27-8 at pp. 72-73.  In addition, plaintiff acknowledged that she continued to work at her own real estate business, collected rent, purchased and sold several properties throughout the time period that she was absent from her Niagara Mohawk job, while also collecting long term disability payments from the company.  The court concurs with the finding of the EEOC, which, in its determination letter, stated that although plaintiff indicated that she was "substantially limited in communication ... the investigation suggests that [plaintiff was] able to

12

communicate, just not in stressful situations, thus [plaintiff's] impairment is not substantially limiting." Doc. No. 1-2 at p. 30.  Accordingly, after a careful review of all the papers submitted in this case, the court finds no evidence that the plaintiff has a disability under the ADA, thus failing to meet the second element of a prima facie case for discrimination pursuant to the ADA.

The court finds that plaintiff also fails to satisfy the third element, that she was otherwise qualified to perform the essential functions of the job, with or without reasonable accommodation.  Plaintiff's assignment prior to her alleged disability was to a customer service position.  The limitations plaintiff presented demonstrated that she was unable to perform the functions of a customer service representative, and her requested  accommodations, i.e., having no direct contact with customers, precluded her from providing customer service to the customers of Niagara Mohawk.  To be sure, one customer service representative was accommodated by not having to take customer service telephone calls, but only because his hearing loss was such that he was rendered physically incapable of performing the job by his disability.  Although defendant asserts it was unable to accommodate plaintiff by placing her in an available position, defendant advised plaintiff that should she find herself able to return to work, she was eligible to bid on any job of her choosing.  Plaintiff acknowledged this in her deposition, and

acknowledged that she was familiar with the process as she had bid on and was assigned to a temporary summer position as a gas mechanic checking gas leaks in the field in March of 2004. Accordingly, because plaintiff's job as a customer service representative entailed her need to interact with defendant's customers, and she was unable or unwilling to do so, the court finds that she was not otherwise qualified to perform the essential functions of the job, with or without reasonable accommodation.

The court also finds that plaintiff fails to meet the requirements of the fourth element needed to establish a prima facie case pursuant to the ADA, that the plaintiff suffered an adverse employment action because of her disability. Defendant argues that as a threshold issue, plaintiff does not have an ADA disability, preventing plaintiff from establishing that she was terminated due to her disability. Defendant argues that the record shows that plaintiff was not discharged or terminated from employment, rather, she was extended long term benefits by the company after she exhausted more than six months of full salary continuation, throughout which time plaintiff's doctors continued to report that she was unable to perform the essential functions of her CSR job. In addition, she was advised that she could bid on a job of her choosing and return to work whenever she was able. Accordingly, the court finds that plaintiff suffered no

adverse employment action because of her stress-related condition.

## III.    CONCLUSION

For the reasons set forth above, the court hereby GRANTS defendant's

motion for summary judgment (Doc. No. 22).  The Clerk is instructed to close this

case.

SO ORDERED.

October 20, 2011

_____
Neal P. McCurn
Senior  U.S. District Judge